Rafey S. Balabanian (Admitted *Pro Hac Vice*)
Ari J. Scharg (Admitted *Pro Hac Vice*)
Edelson McGuire, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
rbalabanian@edelson.com
ascharg@edelson.com

Sean P. Reiss
Edelson McGuire, LLC
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
Tel: (949) 202-7030
sreiss@edelson.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANNA PELLETIER, an individual, on her own behalf and on behalf of all others similarly situated, ) ) ) ) | Case No. 2:09−CV−03503−KJM−KJN |
| Plaintiff, ) ) | The Honorable Kimberly J. Mueller |
| v. ) ) | **PLAINTIFF'S FIRST AMENDED** |
| PACIFIC WEBWORKS, INC., a Nevada Corporation, and BLOOSKY INTERACTIVE, LLC, a California limited liability company, ) ) ) ) ) | **COMPLAINT** |
| Defendants. ) | |

Plaintiff, Deanna Pelletier ("Plaintiff"), brings this First Amended Complaint against

Defendants Pacific WebWorks, Inc. ("Pacific WebWorks"), and Bloosky Interactive, LLC

("Bloosky") (collectively referred to as "Defendants") based upon Defendants' practice of

deceptively marketing and charging Plaintiff and other similarly-situated individuals for

Defendant Pacific WebWorks' work-at-home products without authorization. Plaintiff, for her

First Amended Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her own attorneys.

## Parties

1.      Plaintiff Deanna Pelletier ("Plaintiff") is a natural person and citizen of the State of California.

2.      Defendant Pacific WebWorks, Inc. ("Pacific WebWorks") is an online provider of work-at-home products marketed to consumers nationwide. Pacific WebWorks is a corporation incorporated and existing under the laws of the State of Nevada with its corporate headquarters and principal place of business located at 230 West 400 South, 1st Floor, Salt Lake City, Utah 84101. Pacific WebWorks does business throughout the State of California and nationwide.

3.      Defendant Bloosky Interactive, LLC ("Bloosky") is an advertising network generating online advertisements, consumer traffic for websites selling products and goods, and conversion optimization for those websites. Bloosky also performs as an affiliate marketer in this online space. Bloosky is a limited liability company organized and existing under the laws of the State of California with its headquarters and principal place of business located at 9 Pasteur, Suite 100, Irvine, California 92618. Bloosky does business throughout the State of California and nationwide.

## Jurisdiction and Venue

4.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

5.      Venue is proper in this District under 28 U.S.C. § 1391(a) as the injury arose in this District. Venue is additionally proper because Defendants transact significant business in this District, including soliciting consumer business, and entering into consumer transactions.

**Facts Common to All Counts**

6.     With unemployment rising and wages stagnant, Americans are suffering through the worst economy in decades. In these difficult economic times, ordinary consumers are more than ever subjected to a proliferation of work-at-home offers that promise the ability to easily make thousands of dollars from at-home businesses.

7.     The offers hosted by Pacific WebWorks and marketed by Bloosky, state that consumers will work directly with and be well-paid by the giant web search engine Google. The ability to work for this enormously successful company reasonably supports the promise of sustainable income described in the offers from Defendants.

8.     Pacific WebWorks' and Bloosky's (collectively, "Defendants") offers begin as initial representations made through a common deceptive scheme managed collaboratively by Pacific WebWorks and Bloosky, constituting spam email offers, sponsored links, banner ads on internet search pages, and links in fake news articles and fake blogs (called "flogs"). The purpose of each of these initial representations is to drive consumer online traffic to credit/debit card submit landing pages where a purchase can be made.

9.     These sponsored links, banner ads, fake news articles, and similar methods of gaining a consumer's attention are created and operated by Bloosky in conjunction with a group of affiliate marketers, whose sole objective is to drive traffic to merchant landing pages such as those selling Defendant Pacific WebWorks' products. Bloosky acts in this space as an ad network and/or affiliate marketer, and in that capacity, actively drives traffic to Pacific WebWorks' websites for their own monetary gain. The relationship between Pacific WebWorks on the one hand, and Bloosky on the other, is one of interdependence: Pacific WebWorks needs the ad networks to market to and contract with affiliate publishers who further propagate the deception through deceptive marketing such as fake news articles and flogs; likewise, Bloosky needs Pacific WebWorks to monetize the consumer traffic through purchases and thereafter remit payment to the ad networks.

10.     Pacific WebWorks and Bloosky work together to "optimize" transaction pages so as to drive ever-higher rates of purchase. Both Defendants are motivated to take this active role because the sales revenue generated on a Pacific WebWorks site is the only way that Pacific WebWorks and Bloosky are compensated. Therefore, Bloosky has a vested interest in not only directing consumers to the product page, but also in actively ensuring that a consumer purchases the product. This optimization can include changing the design of ad pages in the order path including the color, words used, placement of words, font size, placement of the Terms of Service, and the use of "pressures" like "You Qualify for Instant Access!" and "…these kits are going FAST!," or the use of running timers counting down the minutes left before an offer "expires." Such pressures are simply fabrications and are dynamically inserted into the website at specified screen locations to further drive sales.

11.     Bloosky employs "affiliate managers" and other representative employees to communicate directly with the affiliate publishers who create deceptive advertising such as sponsored links and fake news articles and blogs, for the purpose of matching them with the highest converting merchant offers (usually the most deceptive), and help them optimize their advertising materials by providing templates and ad copy. At the same time, Bloosky employees communicate with merchants like Pacific WebWorks to match their transaction pages with the publishers' advertising pages and optimize their own transaction pages for higher conversion rates (making them more deceptive). These affiliate managers have full visibility and knowledge of the deceptive advertisements used to drive traffic to work-at-home offers, and likewise, have full knowledge and visibility of the deceptive nature of the merchants' transaction pages.

12.     As a primary inducement, consumers are often simply responding to the many initial representations and screenshots that appear to state a relationship with Google itself. The use of Google's name in this manner, and specifically the prospect of working for one of the world's most successful companies, appears as a primary non-price inducement to deceptively entice consumers to purchase the Pacific WebWorks product.

13.     After a consumer is directed by Bloosky to a Pacific WebWorks landing page displaying a work-at-home offer, Pacific WebWorks offers for sale a product, often a CD or software kit, purportedly designed to enable consumers to "Earn up to $978 or more a day using GOOGLE," "Work from Home & learn to make $1000s a day using GOOGLE!," and "Anyone with a computer and basic typing skills can make money using Google!"

14.     These landing pages typically contain language describing their offering "As seen on: Fox News, CNN," and "USAToday." The website prominently features network logos without license from these media entities and are plainly designed to suggest to a consumer that the offering is supported by a reputable entity. Pacific WebWorks products have never been "seen on" or endorsed by any of the networks claimed on the website.

15.     The initial landing page seen by a consumer is bright and welcoming, and promises "FAST CASH USING GOOGLE" and "HOME INCOME USING GOOGLE," among other pleasing inducements. Representations that drive consumers to these landing pages promise "$7500 a month Working from Home Job: requires basic computer skills." Banner ads even promise "scam free" offers that link to landing pages used by Defendant on which consumers are promised Pacific WebWorks products at prices that are not, in fact, remotely close to the actual price charged by Pacific WebWorks.

16.     Defendants' landing pages contain a testimonial photo of a consumer that benefited from Pacific WebWorks' product. In fact, this photo is a fabrication, inasmuch as Defendants simply use a stock photo (commonly available at websites like iStockPhoto.com) and fabricates the testimonial.

17.     In furtherance of the deception, Defendants' landing pages may be reached from embedded links in fake blog testimonials and fake news articles with, again, stock photos and testimonials purportedly representing actual consumers from one's own city or state. These consumers relate stories of success using the Pacific WebWorks work-at-home products. Examples of these flogs and fake news articles deceptively used to sell Pacific WebWorks's

products are:

    a.   "USA Online Journal-Finance News" in which "Mary Steadman"[1] tells how she "quit her boring job as a manufacturer's representative" and "now makes $6,500+ a month" using Pacific WebWorks products.

    b.   "Consumer Weekly," in which the same "Mary Steadman," now portrayed as "Elaine Love," also lost her "boring" manufacturing job and now makes thousands using Pacific WebWorks products.

    c.   "Chicago Job News" at which "Jerry Reynolds" describes how he "lost his boring job as an account representative for a manufacturing company" and "now makes $5,500+ a month just by submitting small text ads online on Google."

    d.   "Scott Hunter" on "wthguide.info," a fake blog that states how Mr. Hunter also "lost his job as a boring account representative for a manufacturing company." "Scott" makes "$9,000+ a month just by submitting small text ads on Google." Upon information and belief, "Scott Hunter" is the pseudonym of an affiliate marketer driving traffic to a Pacific WebWorks site.

18.   Defendant Pacific WebWorks also derives sales from online traffic routed through fake consumer review sites. At these sites, alleged "advocates" for consumers endorse Pacific

---

[1]   "Mary Steadman," the most widely used fake person in fake news articles selling work-at-home products, is also featured on the following fake news sites, and at least 90 more websites all across the internet:

www.SanFrancisco-Tribune.com, www.SanFranCiscoCityHearld.com, www.Sandiego-Tribune-News.com, www.SanDiego-Tribune.com, www.SanJose-Herald.com, www.SanJose-Times.com, www.TheLosAngelesJournal.com, www.LosAngelesTribuneNews.com, www.LosAngelesNews7.com, www.LosAngelesFinanceNews.com, www.Los-Angeles-Weekly.com, www.LosAngelesDispatch.com, www.4KAWeekIn3Steps.com, www.Action7Journal.com, www.AmericaFinanceNews.com, www.AmericaJobJournal.com, www.AmericaNewsDaily.com, www.B12-Media.com, www.BargainBoomer.com, www.Best-Job-In.com, www.BirmingHamTribune.co.uk, www.Boston-BusinessNews.com, www.Boston-Tribune.com, www.BostonFinanceNews.com, www.BostonGazetteNews.com, www.OrlandoWebTimes.com, www.ReadSomeNews.com, www.Online-Job-News.com, www.NYGazetteNews.com, www.NewYorkPostHearld.com,www.NewYorkPostHearld.com.

WebWorks' products with laudatory language and within the body of the fake reviews link to deceptive transaction pages for those products. Bloosky works with the "advocates" to create and publish fake advertising materials to drive deceived consumers from the initial misrepresentations to a credit/debit card submit page.

19.     The online order path leading to Defendant's transaction pages are littered with pictures of individuals that testify to the success they have enjoyed using Pacific WebWorks' product. The individuals in Defendants' fake photos are not from the consumer's city or state; in fact, the specific locale represented is dynamically generated by instructions contained in the underlying source code for the screen page presented. That is, "Sara Stanley" from "Sacramento" is in fact simply a fictitious person whose city name is generated by source code that recognizes and responds to the (Sacramento) IP address of the consumer's computer.

20.     A consumer is required to give Pacific WebWorks certain "personally identifying information" (PII) to "CHECK AVAILABILITY" of this "<u>LIMITED TIME OFFER</u>!" A consumer's submission of her PII enables Pacific WebWorks to sell this information to other marketers of goods and products. Thus, a consumer actually does not have to "qualify" for anything, but is instead submitting to a lead generation process by which their PII (a "lead") is monetized by Pacific WebWorks and the consumer unknowingly "consents" to the receipt of additional email offers from an untold number of merchants, *i.e.*, anyone to whom Pacific WebWorks can sell this information.

21.     The product offered by Pacific WebWorks is promised at the minimal price of $2.00 or less, which is represented as covering all costs of the product.

22.     Importantly, in order to cover this small charge, Pacific WebWorks requires that consumers give it a credit or debit card number.

23.     A consumer's credit card number is entered into a credit/debit card submit field on an online transaction page (the transaction page most often directly follows the landing page – the order path may be understood as starting with the initial representation that drives traffic to

the landing path where a consumer's PII is taken. A billing or transaction page completes the online order path).

24.     Materially, the only price representation clearly and conspicuously displayed on the credit/debit card submit page or in proximity to the credit/debit card submit box is a line that states "**Total: $1.97.**"

25.     Calls to action like "LIMITED TIME OFFER!" and "WORK FROM HOME, SET YOUR OWN HOURS, THEN LIVE YOUR LIFE!" are found on these pages. These phrases are part of a static background image that are saved and displayed every time the page loads on a consumer's browser.

26.     Compelling phrases including "Satisfaction Guaranteed," and "100% Trusted!" appear in large print scattered about the page.

27.     Ultimately, a consumer reasonably understands that ordering the Pacific WebWorks product is an action that will cause them to incur a small charge on their credit card. In fact, this small price is simply bait for a credit card number that can then be used to impose additional charges on the consumer.

28.     Though the actual price of a product is always material, Defendants Pacific WebWorks omits the real price of its work-at-home products from their the checkout page, or hides the real price in small print and indistinct font.

29.     Though the actual price of a product is always material, Bloosky omits the real price of Pacific WebWorks work-at-home products from their advertisements.

30.     By simply submitting credit or debit card information to Pacific WebWorks in payment of the advertised fee of $1.97 (Defendant also offers identical products at $.97, $1.95, and $2.95), a consumer unwittingly agrees to a monthly recurring charge of $79.90 (also, in some instances, $69.90) for access to a program purportedly containing information that enables a consumer to work from home in concert with Google.

31.     Wholly absent from advertisements of Pacific WebWorks work-at-home products

are any clear and conspicuous price disclosure regarding recurring charges. This charge is recurring in that it appears every month on a consumer's bill. This undisclosed negative option, deceptively tied to a consumer's agreement to pay a small amount for a Pacific WebWorks product, is charged to consumers entirely without their authorization.

32.     Thus, a consumer reasonably expecting to pay $1.97 for a Pacific WebWorks product will be charged that sum plus: 1) $79.90, and 2) $24.90 a month for as long as the consumer fails to notice this charge and object to it.

33.     Only the charge of $1.97 is clearly and conspicuously disclosed by Pacific WebWorks or Bloosky to a consumer responding to a work-at-home offer.

34.     Pacific WebWorks acts with Bloosky to drive traffic to, promote, and sell its work-at-home products. Correspondingly, Pacific WebWorks and Bloosky optimize and continually oversee the creation of the deceptive advertisements concealing material terms and conditions, described herein, and both receive significant revenue from the sale of each deceptively marketed Pacific WebWorks product.

35.     Pacific WebWorks and Bloosky knew or should have known that these ads and offers violate clearly established laws requiring, among other seminal concerns, that all material purchase terms be clearly and conspicuously disclosed to consumers.

36.     Although Defendants use a number of specific paths and representations for their deception, each order path has a core, common underpinning, namely that a consumer will only be charged $1.97 for a Pacific WebWorks work at home product.

**Facts Relating to the Plaintiff Deanna Pelletier**

37.     On July 26, 2009, Plaintiff Deanna Pelletier, an unemployed woman receiving social security disability payments as her only source of income, received an email solicitation advertising a "Google work-at-home opportunity." The unsolicited email advertisement was sent by an affiliate publisher of Defendant Bloosky. Plaintiff clicked on a link within that email message that took her to what appeared to be a news article describing the life-changing

experience of a woman that utilized a Pacific WebWorks product "to make $5,000.00 a month." However, the news article was fake and was created, published, and hosted by Bloosky's affiliate publisher. Plaintiff them clicked on an advertisement within the fake news article that offered the Google Business Kit for $1.97. From there, Plaintiff was directed to Pacific WebWorks' landing page where the Google Business Kit was again offered for $1.97.

38.     Plaintiff reasonably believed that this was an offer from the Internet giant Google.com based, in part, on the product's name. Plaintiff did not know that Google itself has nothing to do with this product.

39.     Plaintiff only authorized Pacific WebWorks to bill her debit card the charge of $1.97.  Nevertheless, and wholly without authorization from Plaintiff, Pacific WebWorks charged and collected from Plaintiff an additional $79.90 without authorization.

40.     Pacific WebWorks remitted a portion of Plaintiff's payment to Bloosky for its role in driving Plaintiff to purchase the product and obtaining Plaintiff's unauthorized payment.

41.     Plaintiff called Pacific WebWorks repeatedly to request a refund. Plaintiff finally spoke with a Pacific WebWorks representative and notified them that she: 1) never authorized Pacific WebWorks to bill her debit card the sum of $79.90, 2) never received the Google Kit, and 3) wanted to cancel her order and receive a refund of the unauthorized charge of $79.90.

42.     Plaintiff told the Pacific WebWorks representative that she would not have agreed to pay $79.90 for this product if she would have been informed that this was the actual price for the product offered. Nevertheless, despite her vehement assertions that she should not be charged this price, Pacific WebWorks refused to give Plaintiff a refund of this money.

43.     Incredibly, after this conversation with Pacific WebWorks' representative, Pacific WebWorks debited recurring amounts of $24.90 from Plaintiff's account in the months following her conversation. Plaintiff does not know what this charge is for and has called Pacific WebWorks repeatedly in an effort to also have this charge removed from her credit card bill. Plaintiff has been assured by various Pacific WebWorks' representatives that this charge will be

removed. Despite these assurances, however, Plaintiff's account continued to be debited $24.90 by Pacific WebWorks on a monthly basis.

44.     Plaintiff has *not* been given a refund from Pacific WebWorks.

45.     Plaintiff never received the Google Business Kit she ordered and paid for.

46.     Bloosky, in conjunction with Pacific WebWorks, created, developed, and propagated the misrepresentations and omissions contained in the unsolicited email advertisement offering the "Google work-at-home" opportunity that was sent to Plaintiff and the fake news article describing the life-changing experience of a woman that "utilized a Pacific WebWorks product to make $5,000.00 a month" to its affiliate publishers. The unsolicited email and fake news article sent to Plaintiff were sent in accordance with, and in furtherance of, Bloosky and Pacific WebWorks' overall scheme to drive consumers to Pacific WebWorks' transaction pages.

47.     Pacific WebWorks had no intention of ever fulfilling Plaintiff's order and sending her the Google Business Kit. In fact, the Google Business Kit offer was nothing more than bait for Plaintiff's credit card number and personal information.

**Class Allegations**

48.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of herself and a Class and a Subclass:

**Pacific WebWorks Class:** Plaintiff brings this action on behalf of herself and a Class of similarly situated individuals, defined as follows:

> All California residents who submitted payment information to Pacific WebWorks for the purpose of obtaining Pacific WebWorks' products or services, and who were charged any amount other than a stated shipping and handling or discounted fee.

**Bloosky Interactive Subclass:** Plaintiff brings this action on behalf of herself and a Subclass of similarly situated individuals, defined as follows:

> All California residents who submitted payment information to a Pacific WebWorks website for the purpose of obtaining Pacific WebWorks' products or services, who

were charged any amount other than a stated shipping and handling or discounted fee, and that were traceably driven to a Pacific WebWorks website by Bloosky Interactive, LLC, or affiliate marketers acting through or in conjunction with Bloosky Interactive, LLC.

The following people are excluded from the Class and Subclass: 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; and 3) persons who properly execute and file a timely request for exclusion from the class and 4) the legal representatives, successors or assigns of any such excluded persons.

49.     Hereinafter, the above-described Class and Subclass shall be stated as "Classes" for purposes of this First Amended Complaint.

50.     **Numerosity:** The exact number of the members of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have deceived thousands of consumers who fall into the definition set forth in the Classes. Members of the Class and Subclass can be identified through Defendants' records.

51.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the Classes, as Plaintiff and other members sustained damages arising out of the wrongful conduct of Defendants, based upon the same transactions which were made uniformly to Plaintiff and the Classes.

52.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class and Subclass, and Defendants have no defenses unique to Plaintiff.

53.     **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages

suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendants. It would be virtually impossible for the individual members of the Classes to obtain effective relief for the misconduct of Defendants. Even if members of the Classes themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this First Amended Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

54.    **Commonality:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not limited to the following:

a.    Whether Defendants' conduct described herein violates the False Advertising Law (Cal. Bus. & Prof. Code Sections 17500, *et seq*.), prohibiting deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service;

b.    Whether Defendants' conduct described herein violates the Consumers Legal Remedies Act (California Civil Code Sections 1750, *et seq*.), prohibiting the act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby;

c.   Whether Defendants' conduct described herein violates the Unfair Competition Law (Cal. Bus. & Prof. Code Sections 17200, *et seq*.), which protects both consumers and competitors by promoting fair competition in commercial markets for goods and services and prohibits any unlawful, unfair or fraudulent business act or practice;

d.   Whether Defendants' conduct described herein results in unjust enrichment to Defendants; and

e.   Whether Defendant Pacific WebWorks' conduct described herein results in a breach of contract.

## COUNT I
**Violation of the False Advertising Law**
**California Business and Professions Code Sections 17500, *et seq*.**
**(On Behalf of Plaintiff and the Classes)**

55.   Plaintiff incorporates by reference the foregoing allegations.

56.   Cal. Bus. & Prof. Code § 17500 provides that it is unlawful for any corporation to knowingly make, by means of any advertising device or otherwise, any untrue or misleading statement with the intent to sell a product or service, or to induce the public to purchase a product or service. Any statement in advertising that is likely to deceive members of the public constitutes false and misleading advertising under Cal. Bus. & Prof. Code § 17500.

57.   As described within, Defendants have disseminated, and continue to disseminate advertising that they know or should reasonably know is false and misleading. This conduct includes, but it is not limited to, promoting and advertising Pacific WebWorks' "work-at-home" products while omitting the actual price, a material term of any transaction. While Defendants fail to disclose the actual price, they also actively misrepresent the actual price(s) consumers are charged when they submit their credit/debit card information.

58.   By committing the acts alleged in this First Amended Complaint, Defendants have knowingly disseminated untrue and/or misleading statements through online advertising in order to sell or induce members of the public to purchase Pacific WebWorks' work-at-home

1    products, in violation of Cal. Bus. & Prof. Code § 17500.

2        59.     Defendants "crammed"[2] Plaintiff and members of the Classes by charging them

3    monies beyond what they authorized. Accordingly, Plaintiff and members of the Classes have

4    suffered injury in fact and lost money as a result of Defendants' acts of false advertising.

5        60.     Plaintiff seeks an order requiring Defendants to (1) immediately cease the

6    unlawful practices stated in this First Amended Complaint; (2) make full restitution of all funds

7    wrongfully obtained; and (3) pay interest, attorney's fees, and costs pursuant to Cal. Code Civ.

8    Proc. § 1021.5.

**COUNT II**
**Violation of the Consumers Legal Remedies Act**
**California Civil Code Sections 1750, *et seq*.**
**(On Behalf of Plaintiff and the Classes)**

12       61.     Plaintiff incorporates by reference paragraphs 1 through 54 above as though fully

13   set forth herein.

14       62.     The Consumers Legal Remedies Act ("CLRA") prohibits the act, use or

15   employment by any person of any deception, fraud, false pretense, false promise,

16   misrepresentation, concealment, suppression or omission of any material fact with intent that

17   others rely upon such act in connection with the sale or advertisement of any merchandise

18   whether or not any person has in fact been misled, deceived or damaged thereby.

19       63.     As described within, Defendants have engaged in deceptive practices, unlawful

20   methods of competition, and/or unfair acts as defined by Cal. Civ. Code §§ 1750, *et seq*., to the

21   detriment of Plaintiff and the Classes.

22       64.     Defendants utilize false and deceptive advertising that both conceals the actual

23   price of Pacific WebWorks' work-art-home products and widely and willfully misrepresents

---

[2]     The FCC defines "cramming" as follows: "'Cramming' is the practice of placing unauthorized, misleading, or deceptive charges on your credit card bill. Crammers rely on confusing credit card bills in an attempt to trick consumers into paying for services they did not authorize or receive, or that cost more than the consumer was led to believe." http://www.fcc.gov/cgb/consumerfacts/cramming.html.

1   testimonial support for the work-at-products offered.

2      65.    Defendants' offers contain unconscionable terms in that they are unfair and

3   inequitable and the material terms of the offers are hidden and actively misrepresented by

4   Defendants.

5      66.    Defendants, acting with knowledge, intentionally and unlawfully brought harm

6   upon Plaintiff and the Classes by deceptively inducing the Plaintiff and the members of the

7   Classes to purchase a product with deceptive and misleading advertisements by failing to clearly

8   and conspicuously disclose the price of the goods and services and by placing unauthorized

9   charges on their credit/debit card accounts. Specifically, Defendants violated Cal. Civ. Code §

10  1750 in at least the following respects:

11         a.   Violating § 1770(a)(2) by misrepresenting the source, sponsorship, approval, or

12              certification of Defendant Pacific WebWorks' work-at-home products;

13         b.   Violating § 1770(a)(3) by misrepresenting the affiliation, connection, or

14              association with, or certification by, a third party in relation to Defendant Pacific

15              WebWorks' work-at-home products;

16         c.   Violating § 1770(a)(9) by advertising Defendant Pacific WebWorks' work-at-

17              home products with the intent not to sell them as advertised;

18         d.   Violating § 1770(a)(13) by making false or misleading statements of fact

19              concerning the reasons for, existence of, or amounts of price reductions related to

20              Defendant Pacific WebWorks' good or services;

21         e.   Violating § 1770(a)(14) by representing, through misrepresentations and

22              omissions, that a transaction confers or involves rights, remedies, or obligations

23              which it does not have or involve, or which are prohibited by law; and

24         f.   Violating § 1770(a)(19) by inserting an unconscionable provision in the offer for

25              Defendant Pacific WebWorks' work-at-home products;

26     67.    Plaintiff and the Classes have suffered harm as a proximate result of the violations

27

28

FIRST AMENDED COMPLAINT                                    2:09−CV−03503−KJM−KJN

16

of law and wrongful conduct of the Defendants.

68.     Under Cal. Civ. Code § 1780(a) and (b), Plaintiff and the Classes seek injunctive relief requiring Defendants to cease and desist the illegal conduct stated in this First Amended Complaint, and any other appropriate remedy for violations of the CLRA.

**COUNT III**
**Violation of the Unfair Competition Law**
**California Business and Professions Code Sections 17200, *et seq.***
**(On Behalf of Plaintiff and the Classes)**

69.     Plaintiff incorporates by reference the foregoing allegations.

70.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

71.     The UCL prohibits any unlawful, unfair or fraudulent business act or practice. A business practice need only meet one of the three criteria to be considered unfair competition. An unlawful business practice is anything that can properly be called a business practice and that at the same time is forbidden by law. A fraudulent business practice is one in which members of the public are likely to be deceived.

72.     As described within, Defendants' continued utilization of unlawful and unconscionable marketing practices, and the continuing practice of charging consumers credit cards without authorization, constitutes an unlawful and unfair business practice in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

73.     In deceiving Plaintiff and the Classes by creating and supporting advertising that fails to clearly and conspicuously disclose the actual price of its products, and inducing Plaintiff and members of the Classes to proffer payment information based on that misrepresentation, Defendants have engaged in deceptive trade practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

74.     The price of a consumer product is a material term of any transaction because it is likely to affect a consumer's choice of, or conduct regarding, whether to purchase a product. Any

deception related to the price of a consumer product is materially misleading.

75.     Defendants' misrepresentation of the price of Pacific WebWorks' products is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

76.     Defendants have violated the "unfair" prong of the UCL in that their actions caused substantial injury to consumers by charging their credit cards without their consent after inducing them to submit their information through deceptive marketing. The injury caused by Defendants' conduct is not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided.

77.     Defendants have violated the "fraudulent" prong of the UCL in that their statements, advertisements, and representations regarding what consumers would be charged for Pacific WebWorks' products are false and likely to deceive a reasonable consumer.

78.     Defendants have violated the "unlawful" prong of the UCL in that Defendants' conduct violated the Consumer Legal Remedies Act (Cal. Bus. & Prof. Code § 1750 *et seq.*) and the False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq*.).

79.     Plaintiff and the Classes have suffered harm as a proximate result of the violations of law and wrongful conduct of Defendants.

80.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order of this Court permanently enjoining Defendants from continuing to engage in unfair and unlawful conduct.

81.     Plaintiff seeks an order requiring Defendants to (1) immediately cease the unlawful practices stated in this First Amended Complaint; (2) make full restitution of all funds wrongfully obtained; and (3) pay interest, attorney's fees, and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT IV**
**Fraud in the Inducement**
**(On Behalf of Plaintiff and the Classes)**

82.     Plaintiff incorporates by reference paragraphs 1 through 54 above as though fully set forth herein.

83.     As described with particularity in paragraphs 6 through 47, and throughout all Counts of this First Amended Complaint, Defendants have disseminated, and continue to disseminate advertising and transaction pages that they know or should reasonably know are false and misleading. This conduct includes, but it is not limited to, promoting and advertising the "Google Business Kit" while omitting the actual price, a material term of any transaction. Defendant Pacific WebWorks and Bloosky actively omit and misrepresent the actual price(s) consumers are charged when they submit their credit/debit card information.

84.     Through a series of advertisements, representations and false statements, and omissions regarding the efficacy, association, and price of work-at-home products, Defendants acted in concert to misrepresent the actual price a consumer would be charged. Bloosky facilitated the widespread distribution of Pacific WebWorks' work-at-home products by optimizing, directing and recruiting third party publishers to promote specific Pacific WebWorks landing pages that included deceptive terms. Bloosky had knowledge of the deceptive nature of these work-at-home offers and still sought to actively drive consumers to them for their own monetary gain.

85.     Both Pacific WebWorks and Bloosky knew that the "Google Business Kit" was not affiliated with, or endorsed by, Google, Inc. Still, both Pacific WebWorks and Bloosky advertised the product to Plaintiff as a "Google work-at-home opportunity."

86.     Pacific WebWorks, in conjunction with Bloosky, took concrete and intentional steps to omit and/or conceal the actual price of the Google Business Kit that was ultimately placed on the credit cards of members of the Classes. Pacific WebWorks intentionally omitted all representations of the actual price, or made said representations difficult to locate and/or read by hiding these representations on a separate page, or displaying these representations far from the payment fields in a miniscule font and in an indistinct color.

87.     Bloosky took concrete and intentional steps to omit and/or conceal the actual price ultimately placed on the credit cards of members of the Subclass. Bloosky intentionally

1    omitted the actual price of the Google Business Kit and/or concealed the price disclosure in its

2    advertising material on a separate page. Further, Bloosky and their affiliate marketers assisted in

3    the design of Pacific WebWorks' landing pages so as to omit the actual price and/or conceal the

4    actual price disclosures far from the payment fields in a miniscule font and in an indistinct color.

5          88.    Pacific WebWorks and Bloosky actively took part in optimizing the work-at-

6    home transaction pages so as to increase the rate of conversions (sales) and have full knowledge

7    and visibility of the website content and each transaction, including knowledge of the omitted

8    and/or concealed prices. For example, Bloosky pays its affiliate marketers and publishers an

9    amount far exceeding the *de minimis* product price advertised to consumers (*e.g.,* an ad network

10   will offer an affiliate/publisher who drives traffic to a particular transaction page "$42.00 / Sale."

11   The same page, posted for use by their stable of affiliates by Bloosky, will state, "**Cost to**

12   **Consumer:** $1.97"). Thus, all Defendants clearly understand that the offer pages they create and

13   post for publishers do not contain a clear and conspicuous disclosure of the actual price a

14   consumer will be charged or, put differently, all know that a consumer will be charged a sum

15   beyond the $1.97 that they advertise.

16         89.    Defendants intentionally misrepresented the association Pacific WebWorks'

17   work-at-home products have with Google and other media outlets by making representations that

18   the products stem from Google and have been endorsed by television networks. Bloosky knew

19   that Pacific WebWorks, and their affiliate publishers, were actively misusing the Google name

20   and other trademarks to deceive consumers, and Bloosky was working with its affiliate marketers

21   and publishers to create and design said deceptive advertising.

22         90.    In furtherance of their fraudulent conduct, Defendants advertised and promoted

23   their work-at-home products by using the word "free" and other variations of "free" where the

24   actual charges, and/or any conditions placed on the offer were not clearly and conspicuously

25   disclosed to the consumer at the time the offer was made. Bloosky knew that Pacific WebWorks

26   actively misused the word "free" to deceive consumers, and Bloosky was working with its

27

28

affiliate publishers to create and design deceptive advertising using the term "free."

91.     Defendants additionally promoted their products through a network of affiliate publishers operating fake news articles and fake blogs. These promotions and marketing materials feature widespread use of the term "free" to describe Defendants' product. Bloosky knew that its affiliate marketers and publishers were actively misusing the word "free" to deceive consumers and was working with its affiliate marketers and publishers to create, produce, and design the content published in the fake news articles and blogs.

92.     By committing the acts alleged in this First Amended Complaint, Pacific WebWorks and Bloosky have knowingly created, produced, published, and disseminated untrue and/or misleading statements through fraudulent advertising in order to sell or induce members of the public to purchase work-at-home products.

93.     The price of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the price of a consumer product is materially misleading.

94.     The misrepresentation of the price of a product is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

95.     Defendants knew or should have known of the falsity of the representations made regarding the work-at-home products they marketed.

96.     Defendants intended that the deceptive and fraudulent representations would induce a consumer to rely and act based on those false representations.

97.     Plaintiff and members of the Classes were all charged monies beyond what they authorized. Accordingly, Plaintiff and members of the Classes have suffered injury in fact and lost money in justifiable reliance on Defendants' misrepresentations and omissions of material fact.

98.     In deceiving Plaintiff and the Classes by creating and supporting advertising that omits and/or fails to clearly and conspicuously disclose the actual price of Pacific WebWorks'

work-at-home products, and inducing Plaintiff and the Classes to proffer payment information based on such misrepresentations and omissions, both Defendants have engaged in fraudulent practices designed to mislead and deceive consumers.

99.     Pacific WebWorks had no intention of ever fulfilling Plaintiff or the Classes' orders and sending the Google Business Kits. In fact, the Google Business Kit offer was nothing more than bait for Plaintiff's and the Classes' credit card numbers and other personal information.

100.    Plaintiff and the Classes have suffered harm as a proximate result of the violations of law and wrongful conduct of Defendant Pacific WebWorks.

101.    Plaintiff and the Subclass have suffered harm as a proximate result of the violations of law and wrongful conduct of Defendant Bloosky.

102.    Plaintiff, on her own behalf, and on behalf of the Classes, seeks damages for Defendants' unlawful conduct.

## COUNT V
### Conspiracy to Commit Fraud in the Inducement
### (On Behalf of Plaintiff and the Classes)

103.    Plaintiff incorporates by reference paragraphs 1 through 54 and 82 through 102 above as though fully set forth herein.

104.    Pacific WebWorks and Bloosky acted in concert as business partners and through a common enterprise to drive sales of work-at-home products, such as the Google Business Kit, and cram consumers' credit and debit card bills with unauthorized charges through fraudulent and deceptive marketing, as stated in Count IV of this First Amended Complaint.

105.    As a fundamental part of their business relationship, Pacific WebWorks and Bloosky acted to deceive consumers regarding the actual price of the work-at-home products, thereby inducing consumers to submit their credit/debit card information, on which Pacific WebWorks crammed unauthorized charges. Perpetrating the fraudulent activity described herein requires multiple identical omissions and misrepresentations from Defendants, each one

1   reinforcing the legitimacy of the deceptive offer; therefore, it is imperative for Pacific

2   WebWorks and Bloosky to work cooperatively and with knowledge of each other's marketing

3   methods. Bloosky plays the central role in creating a consistent appearance by ensuring that

4   Pacific WebWorks' transaction pages and its affiliate publishers' sponsored links, fake news

5   articles and blogs all convey the same deceptive marketing message.

6        106.   As part of this unified scheme, Bloosky received a commission from Pacific

7   WebWorks for its role in driving consumers to purchase a Pacific WebWorks work-at-home

8   product and obtaining consumers' unauthorized payment.

9        107.   Defendants took overt acts in furtherance of their conspiracy across the nation,

10   and specifically took overt acts in furtherance within California. As described with particularity

11   above, Defendants formed contracts with each other, created deceptive marketing,

12   advertisements, websites, and other solicitation materials to drive consumers to the work-at-

13   home transaction pages with knowledge that the marketing contained therein was false and

14   misleading, and with the intent that the marketing taken as a whole would be relied on by

15   consumers. Defendants further partnered with affiliate markers and publishers to increase the

16   effectiveness of their deceptive and fraudulent marketing. Defendants, working together, and

17   working with non-defendant affiliate marketers and publishers, formed a mutually beneficial

18   network of deceptive and misleading marketing designed to induce consumers to submit a credit

19   or debit card number for the purchase of Pacific WebWorks' work-at-home products.

20        108.   Any single Defendant, acting alone, would be unable to accomplish the level of

21   deception and misrepresentations accomplished by Defendants acting together. The combination

22   of their joint deception, embodied in the "creative" benefits derived from this combination,

23   reinforces the appearance of legitimacy presented to consumers, thereby increasing the

24   likelihood that a consumer will submit their credit or debit card number. Pacific WebWorks

25   would not have the widespread reach to consumers across a wide variety of websites and would

26   be unable to enroll customers with the same effectiveness without the direct involvement,

27

28

assistance, and direction of Bloosky.

109.    Plaintiff and the Classes have suffered harm in the form of monetary damages as a proximate result of the conspiracy and violations of law carried out by Pacific WebWorks and Bloosky.

110.    Plaintiff, on her own behalf, and on behalf of the Classes, seeks damages for Pacific WebWorks' and Bloosky's unlawful conduct.

**COUNT VI**
**Breach of Contract**
**(On Behalf of Plaintiff and the Pacific WebWorks Class)**

111.    Plaintiff incorporates by reference paragraphs 1 through 54 above as though fully set forth herein.

112.    In reliance upon Defendants' misrepresentations and deceptive advertising, Plaintiff entered into a contract to receive a product from Pacific WebWorks for the price of $1.97. Because of the deceptive misrepresentations and omissions as described herein, Plaintiff and the Pacific WebWorks Class entered their credit card information with the understanding that they would only be charged $1.97 because the only price disclosure given to Plaintiff and the members of the Class was the discounted fee of $1.97.

113.    By cramming additional charges on the credit/debit cards of Plaintiff and the members of the Class, Pacific WebWorks breached the contract for the purchase of a product at the clearly disclosed price of $1.97. Plaintiff and the members of the Class did not assent to any additional charges and did not reasonably expect that the contract for purchase and sale would include such additional charges because the only price disclosure given to Plaintiff and the members of the Class was the discounted fee of $1.97.

114.    At all times relevant to this action, Pacific WebWorks acted willfully and with the intent to breach the contracts they entered into with Plaintiff and the Class.

115.    Pacific WebWorks also breached the contract by failing to deliver the Google Business Kit to Plaintiff after she purchased it.

116.    Pacific WebWorks had no intention of ever fulfilling Plaintiff's order and sending her the Google Business Kit. In fact, the Google Business Kit offer was nothing more than bait for Plaintiff's credit card number and personal information.

117.    Plaintiff and the Pacific WebWorks Class have suffered damages as a direct result of Pacific WebWorks's acts and practices in the form of monies paid and lost.

118.    Plaintiff, on her own behalf, and on behalf of the Class, seeks damages for Defendant's breach of contract, as well as interest and attorney's fees and costs pursuant to Cal. Code Civ. Proc. § 1021.5.

**COUNT VII**
**Restitution/Unjust Enrichment**
**(On Behalf of the Plaintiff and the Bloosky Subclass)**

119.    Plaintiff incorporates by reference paragraphs 1 through 54 above as though fully set forth herein.

120.    Plaintiff and members of the Bloosky Subclass conferred a monetary benefit on Bloosky. Bloosky has received and retained money belonging to Plaintiff and the Bloosky Subclass resulting from substantial and unauthorized charges placed on their credit/debit card bills by Bloosky. Bloosky profits from each individual purchase made by a consumer after being directed by Bloosky to Pacific WebWorks' transaction pages.

121.    Bloosky appreciates or has knowledge of such benefit.

122.    Under principles of equity and good conscience, Bloosky should not be permitted to retain the money belonging to Plaintiff and members of the Bloosky Subclass, which Bloosky has unjustly received as a result of its unlawful actions.

123.    Plaintiff and other members of the Classes suffered damages as a direct result of Bloosky's conduct.

124.    Plaintiff, on her own behalf, and on behalf of the Bloosky Subclass, seeks restitution for Bloosky's unlawful conduct, as well as interest and attorney's fees and costs.

**WHEREFORE**, Plaintiff Deanna Pelletier on behalf of herself and members of the Class and Subclass, pray for the following relief:

a.      Certify this case as a class action on behalf of the Class and Subclass as defined above and appoint Deanna Pelletier as class representative and undersigned counsel as class counsel;

b.      Enter judgment against Pacific WebWorks, Inc. and Bloosky Interactive, LLC for all monetary, actual, consequential, and compensatory damages caused by its unlawful conduct;

c.      Award Plaintiff and the Class and the Subclass civil penalties and/or punitive damages for violations of the above-cited statutes and law;

d.      Award Plaintiff and the Class and the Subclass reasonable costs and attorneys' fees;

e.      Award Plaintiff and the Class and the Subclass pre- and post-judgment interest;

f.      Enter judgment for injunctive, statutory and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class and the Subclass; and,

g.      Award such other and further relief as equity and justice may require.

### JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: January 27, 2012                    Respectfully Submitted,

                                           **DEANNA PELLETIER, individually and on
                                           behalf of all others similarly situated.**

                                           By: /s/  Ari J. Scharg
                                                    One of her Attorneys

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
Ari J. Scharg (Admitted *Pro Hac Vice*)
Edelson McGuire, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378
rbalabanian@edelson.com
ascharg@edelson.com

Sean P. Reiss
Edelson McGuire, LLC
30021 Tomas Street, Suite 300
Rancho Santa Margarita, CA 92688
Tel: (949) 202-7030
sreiss@edelson.com

*Counsel for Plaintiff*

1

## CERTIFICATE OF SERVICE

2       I, Ari J. Scharg, an attorney, hereby certify that on January 27, 2012, I served the above

3   and foregoing **Plaintiff's First Amended Complaint**, by causing true and accurate copies of such paper to be filed with the Court and transmitted to all counsel of record via the Court's CM/ECF electronic filing system.

4           /s/ Ari J. Scharg

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28